IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TERRANCE PETERSON, | : | |
| Plaintiff, | : | |
| v. | : | Civ. No. 16-160-LPS |
| DAVD J. SHULKIN, | : | |
| Defendant. | : | |

Terrance Peterson, Newark, Delaware, Pro Se Plaintiff.

David C. Weiss, United States Attorney, and Jennifer K. Welsh, Assistant United States Attorney, for the District of Delaware, Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

March 14, 2018
Wilmington, Delaware

[signature]

**STARK, U.S. District Judge:**

I.   **INTRODUCTION**

Plaintiff Terrance Peterson ("Plaintiff") proceeds *pro se*. He filed this employment discrimination action against the Secretary of Veterans Affairs ("Defendant"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et. seq.*, ("Title VII"), the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 621, *et seq.*, ("Rehab Act"), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"). (D.I. 2) The original Complaint was dismissed on March 17, 2017 and Plaintiff was given leave to amend. (D.I. 17, 18) On April 3, 2017, Plaintiff filed a combined Amended Complaint and objection/reconsideration of dismissal of claims of due process. (D.I. 19) Presently before the Court are Defendant's motion to dismiss and Plaintiff's motion for order to establish jurisdiction, as well as Plaintiff's opposition to the motion to dismiss. (D.I. 22, 23, 24) For the reasons that follow, the Court will grant in part and deny in part Defendant's motion, deny Plaintiff's motion for an order to establish jurisdiction, deny Plaintiff's objection/motion for reconsideration, and give Plaintiff leave to file a second amended complaint.

II.   **BACKGROUND**

The original Complaint contained numerous claims including employment discrimination under Title VII by reason of race and sex. It also alleged employment discrimination by reason of disability under the ADA which, given Plaintiff's *pro se* status, the Court construed as a claim under the Rehab Act.[1] Plaintiff was given leave to amend the Title VII and Rehab Act claims. Plaintiff timely amended. The Amended Complaint contains the following counts: Count One, race discrimination under Title VII; Count Two, disability discrimination under the Rehab Act; Count

---

[1] *See Spence v. Straw*, 54 F.3d 196, 197 (3d Cir. 1995) (Rehabilitation Act is "exclusive means by which a plaintiff may raise claims against federal agencies relating to handicap discrimination").

1

Three, retaliation under Title VII and the ADEA;[2] Count Four, violation of the right to due process;[3] Count Five, hostile work environment under Title VII, the Rehab Act, and the ADEA; and Count Six, retaliation under the Uniformed Services Reemployment Right Act ("USERRA"), 38 U.S.C. §§ 4301-4335. (D.I. 19)

Plaintiff's federal employment was terminated on April 25, 2014. Plaintiff alleges employment discrimination based upon race and disability, as well as retaliation, as an eligible veteran male for having complained about discrimination. Plaintiff alleges he was subjected to a hostile work environment when sham investigations were initiated against him after he made "protected disclosures" to the Office of the Inspector General, two senators, and a congressman. He further alleges he was not provided a reasonable accommodation, was punished for requesting medical leave, and was required to attend anger management based upon a fraudulent investigation that used witnesses who were subjects of his protected disclosures. Plaintiff alleges his employment was terminated by Defendant, who sought a criminal investigation based upon false allegations.

Plaintiff has filed multiple EEOC complaints. Plaintiff also alleges that his EEO complaints were used as affirmative defenses in a Merit Systems Protection Board ("MSPB") appeal. The MSPB issued a decision on July 31, 2015. (D.I. 13 at Ex. B) Plaintiff appealed his termination to the Office of Federal Operations on August 3, 2015. (*See* D.I. 4) The February 25, 2016 decision found that Plaintiff did not demonstrate that he was subjected to reprisal or discrimination. (*Id.*)

---

[2] The ADEA is the Age Discrimination in Employment Act, 29 U.S.C. § 623(d). The Court construes Plaintiff's reference to the ADEA as instead intended to be a reference to the ADA, since this is first time he has mentioned age discrimination in his pleadings. The Court previously dismissed the ADA claims, and Plaintiff was not given leave to amend them. They will not be considered any further in this Memorandum Opinion.

[3] The Court previously dismissed the due process claims, and Plaintiff was not given leave to amend them. They will not be considered any further in this Memorandum Opinion.

Plaintiff was employed as a health technician at the VA in Wilmington, Delaware. He worked in the specialty clinic and alleges he was qualified for the position. Plaintiff alleges that he was falsely accused of "performing out of the scope of [his] position." (D.I. 19 at ¶ 7) His first level supervisor was Vanessa Covington ("Covington"), an African American female, and his second level supervisor was Ruthann Wolski ("Wolski"), a white female. (*Id.* at ¶ 8) Plaintiff alleges that Covington treated him differently from similarly situated employees and she created a hostile work environment that included privacy violations regarding Plaintiff's request for medical leave and discussions Plaintiff had with a physician when Plaintiff complained the physician was not following protocol. (*Id.* at ¶ 9)

Plaintiff alleges he was transferred to a different department in December 2012 at the request of Wolski. (*Id.* at ¶ 11) Plaintiff believes he was transferred to the dialysis department for making protected disclosures and due to an EEOC complaint that was at the hearing stage. (*Id.*) He alleges Covington was aware that Plaintiff had made disclosures regarding dialysis practices. (*Id.* at ¶ 13) During this time, Plaintiff contacted a senator's office and complained of retaliation and that he was targeted due to his reporting of VA practices. (*Id.*) Plaintiff made a report to the Office of Inspector General about the practices. (*Id.*) At the same time, he complained that Covington refused to send him to training or promote him. (*Id.*) A white male was selected to attend the training, but the position for promotion was not created. (*Id.*)

Plaintiff filed a hostile work environment and discrimination claim based upon race and sex in January 2013. (*Id.* at ¶ 14) Plaintiff was transferred back to the specialty clinic and alleges that the "hostility and retaliation began by limiting [his] ability to move about the clinics and work in different areas for coverage." (*Id.*) Plaintiff alleges he was accused of not being in his assigned area and "reported false allegations of threats." (*Id.*) Plaintiff alleges that similarly situated employees

3

were not treated in this manner, and he was the only health technician who had designated lunch times and had his office changed for no reason. (*Id.*)

In March 2013, Plaintiff complained to Human Resources about the hostile work environment created by Covington. (*Id.* at ¶ 15) Then VA director Daniel Hendee ("Hendee"), a white male, convened an Administrative Investigative Board ("AIB") to investigate the ENT department. (*Id.*) Plaintiff alleges his hostile work environment claim was not investigated.[4] (*Id.*)

As a result of the AIB investigation, Plaintiff was ordered to attend anger management. (*Id.* at ¶ 17) Plaintiff alleges that he attended anger management in September 2013, having taken the remainder of his shift to attend. (*Id.* at 18) Covington called to inquire why the anger management counselor had not seen Plaintiff. (*Id.*) The counselor stated that Plaintiff was late; Plaintiff alleges that he did not agree with the counselor, told him he would reschedule, and left. (*Id.*) In October 2013, Plaintiff was suspended for ten days (to take place in December) for "conduct unbecoming a federal employee for not attending anger management and was accused of being hostile to the counselor." (*Id.* at ¶ 19) He later completed the anger management program. (*Id.*) In October 2013, Plaintiff sought leave under the Family Medical Leave act due to "continued harassment and the discriminatory allegations of being angry and a threat as an African American male and false claim of operating out of his scope of duties." (*Id.* at ¶ 20)

Plaintiff's ten-day suspension took place from December 2, 2013 to December 13, 2013. (*Id.* at ¶ 19) He returned to work on December 15, 2013, and on December 18, 2013 was given a letter stating that, effective December 17, 2013, he was barred from the facility due to threats. (*Id.*) Plaintiff alleges he was able to perform his duties as assigned, but was barred from the facility as a

---

[4] Plaintiff filed a third EEOC complaint in August 2013. (*Id.* at ¶ 16) He complains that it was not adjudicated and that the VA did not issue a final decision. (*Id.*)

pretext to discharge him in retaliation for multiple complaints and disclosures regarding the facility and its agent. (*Id.* at ¶ 20) Plaintiff alleges that he was treated differently from a similarly situated employee who is an African American male, non-whistleblower, non-veteran, accused of inappropriate conduct. (*Id.*)

## III. LEGAL STANDARDS

Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Amended Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). Defendant moves for dismissal pursuant to Rule 12(b)(6).

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, \_\_U.S.\_\_, 135 S.Ct. 346, 347 (2014). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citing *Iqbal*, 556 U.S. at 678 and *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

Defendant moves for dismissal on the grounds that the Amended Complaint does not cure the deficiencies that led the Court to dismiss the original Complaint. (D.I. 23)

## IV. DISCUSSION

### A. Title VII

Plaintiff alleges employment discrimination by reason of race. To state a claim under Title VII for employment discrimination, Plaintiff must allege that: (1) he is a member of a protected

class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Plaintiff need not convince the Court of any of these elements at the motion to dismiss stage, but must submit more than "the naked assertion that he was discharged because" of his membership in a protected class. *See Santos v. Iron Mountain Film & Sound*, 593 F. App'x 117, 119 (3d Cir. Nov. 25, 2014). To state a Title VII retaliation claim, Plaintiff must allege that: (1) he engaged in conduct protected by Title VII; (2) his employer took an adverse action against him either after or contemporaneous with the protected activity; and (3) a causal link exists between his protected conduct and the employer's adverse action. *See Slagle v. County of Clarion*, 435 F.3d 262, 265 (3d Cir. 2006). To state a hostile work environment claim, Plaintiff must allege that: (1) he suffered intentional discrimination because of his race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of vicarious liability. *See Aman v. Cort Furniture Retail Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996).

The crux of a Title VII claim is that an employee has been treated less favorably than others on account of his race, color, religion, sex, or national origin. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003). Plaintiff's original Complaint indicates his employment was terminated, and he checked boxes on the complaint form that the discrimination was based upon race and sex. In the Amended Complaint, Plaintiff alleges race discrimination and refers to his supervisors, some of whom are African American and some of whom are white. The Amended Complaint states that Plaintiff was not provided training, he was transferred to another department, and he was terminated.

7

Even when liberally construing Plaintiff's allegations, as the Court must, the Amended Complaint fails to state a Title VII claim of race discrimination. At most, Plaintiff alleges that he is a member of a suspect class and he suffered an adverse employment decision, but even those allegations are nothing more than bare assertions. Significantly, Plaintiff fails to allege that any alleged discrimination occurred because of his race. In addition, at least one of his purported comparators is, like him, an African American male. Plaintiff must plead facts that plausibly connect his race to the adverse actions complained of, including training, transfer, and discharge. The Amended Complaint fails in this regard.

Plaintiff has failed to state Title VII claims and, therefore, the Court will grant Defendant's motion to dismiss. However, since it appears plausible that Plaintiff may be able to articulate a Title VII discrimination claim he will be given one final opportunity to amend the claim found at Count One of the Amended Complaint.

Plaintiff alleges retaliation because he made complaints about the medical practices at the VA, he complained of a hostile work environment, and he filed several charges of discrimination. The Amended Complaint refers to protected acts (filing charges of discrimination and making hostile work environment complaints) and alleged adverse employment actions that followed after the complaints. Liberally construing the allegations, as the Court must, the Court finds that Plaintiff has adequately alleged retaliation claims under Title VII as found under Count Three of the Amended Complaint.

Finally, the Court considers the hostile work environment claim. As pled, the Court is unable to discern whether the behavior Plaintiff complains of is the sort of conduct courts have found to constitute a hostile work environment. *See e.g., Kokinchak v. Postmaster Gen. of the U.S.*, 677 F. App'x 764, 767 (3d Cir. Feb. 3, 2017). "In assessing whether conduct is severe or pervasive,

8

courts consider the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance.'" *Id.* (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). The Amended Complaint merely alleges in a conclusory manner that Plaintiff was subjected to a hostile work environment without allegations to support the claim. Plaintiff has failed to state a claim and, therefore, it will be dismissed. However, since it appears plausible that Plaintiff may be able to articulate a hostile work environment claim he will be given one final opportunity to amend the claim found at Count Five of the Amended Complaint.

### B. Rehab Act

Plaintiff alleges a disability by reason of occupational stress and being perceived as not being able to perform his duties, which resulted in a falsification in his veteran's record in violation of the Rehab Act. (D.I. 19 at ¶ 27) In order to sustain a claim of discrimination under the Rehab Act, Plaintiff must show that: (1) he has a disability; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he was nonetheless terminated or otherwise prevented from performing the job. *See Donahue v. Consolidated Rail Corp.*, 224 F.3d 226, 229 (3d Cir. 2000). The Rehab Act provides that the "standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under Title I of the Americans with Disabilities Act of 1990." 29 U.S.C. § 794(d); *see also Donahue*, 224 F.3d at 229 ("The elements of a claim under § 504(a) of the Rehabilitation Act are very similar to the elements of a claim under Title I of the Americans with Disabilities Act. . . .").

The Amended Complaint fails to state an employment discrimination claim by reason of disability. Plaintiff alleges occupational stress and that he was able to perform his duties as assigned, but he does not allege that the occupational stress resulted in Plaintiff's removal from federal service. Instead, Plaintiff alleges he was ordered to attend anger management, which resulted in falsification of his veteran's record by a psychologist who never evaluated Plaintiff. As currently pled, the Amended Complaint fails to state a claim under the Rehab Act. Therefore, the Court will grant Defendant's motion to dismiss this claim. However, Plaintiff will be given one final opportunity to amend the claim found at Count Two of the Amended Complaint.

C. USERRA

Count Six of the Amended Complaint raises violations of the USERRA by, it appears, reason of retaliation. This is the first time Plaintiff has raised this claim. When Plaintiff was given leave to amend, it did not include allowing him to raise new claims.

USERRA was enacted to ensure that civilian employees are not adversely treated by employers, within the context of civilian employment, because of the employee's military status. *See Tucker v. Wynne*, 2009 WL 2448520, at *5 (D.N.J. Aug. 10, 2009). USERRA's provisions are to prevent and/or compensate service members for employment discrimination based on military status. *See Gordon v. Wawa*, 388 F.3d 78, 85 (3d Cir. 2004). The statute does not authorize a private USERRA action against the federal government, as an employer, in a federal district court; rather, it confers jurisdiction upon the MSPB. *See* 38 U.S.C. §§ 4322 and 4324(b); *see also Yates v. MSPB*, 145 F.3d 1480, 1483 (Fed. Cir. 1998).

Decisions of the MSPB are reviewed by the Federal Circuit on appeal. *See* 38 U.S.C. § 4324(d). The MSPB is authorized to determine whether a Federal executive agency has complied with USERRA, and to compel an agency to comply with the statute if a violation of the statute has

been determined. *See* 38 U.S.C. § 4324(c)(2). The MSPB has initial jurisdiction over claims under USERRA and, therefore, Plaintiff's claim is not properly before this Court. Therefore, the Court will grant Defendant's motion to dismiss Count Six of the Amended Complaint.

### D. ADEA

As noted, the Amended Complaint refers to the ADEA. It is far from clear that Plaintiff intended to raise an ADEA claim. The ADEA makes it unlawful for an employer to discharge an employee due to the individual's age. *See* 29 U.S.C. § 623. Under the ADEA, a plaintiff must establish that: (1) he was over forty years old; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by a person sufficiently younger to permit an inference of age discrimination. *See Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001).

To the extent an ADEA claim is raised, it is dismissed. There are no allegations that Plaintiff was discriminated against on the basis of age.

## V. MISCELLANEOUS FILINGS

Plaintiff filed a motion for an order establishing jurisdiction. (D.I. 22) It is not clear what Plaintiff seeks. This Court has jurisdiction by reason of a federal question pursuant 28 U.S.C. § 1331. Plaintiff mentions the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), but the Amended Complaint does not. The Court will deny the motion.

Plaintiff included in his Amended Complaint an objection to the dismissal of the due process claim. (D.I. 19) To the extent Plaintiff moves for reconsideration of this dismissal, the motion will be denied. The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "A proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or

(3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). Plaintiff's motion fails to meet the grounds required for reconsideration.

## VI. CONCLUSION

For the above reasons, the Court will (1) deny Plaintiff's objection/motion for reconsideration (D.I. 19); (2) deny Plaintiff's motion for an order to establish jurisdiction (D.I. 22); and (3) grant in part and deny in part Defendant's motion to dismiss (D.I. 23). Counts One, Two, Four, Five, and Six of the Amended Complaint will be dismissed. Plaintiff will be given one final opportunity to amend to cure the pleading defects in Count One (Title VII race discrimination), Count Two (Rehab Act), and Count Five (hostile work environment).

An appropriate Order will be entered.