# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

TERRANCE PETERSON,                         :
                                           :
       Plaintiff,                      :
                                           :
   v.                                    :    Civ. No. 16-160-LPS
                                           :
ROBERT WILKIE,[1]                          :
                                           :
       Defendant.                      :

---

Terrance Peterson, Newark, Delaware, Pro Se Plaintiff.

David C. Weiss, United States Attorney, and Dylan J. Steinberg, Assistant United States Attorney for the District of Delaware, Wilmington, Delaware.   Counsel for Defendant.


## MEMORANDUM OPINION


October 26, 2020
Wilmington, Delaware

---

[1] David Shulkin was the United States Secretary of Veterans' Affairs at the time of the filing of the Amended Complaint.   Robert Wilkie was sworn in as the Secretary of Veterans' Affairs on July 30, 2018.   Pursuant to Federal Rule of Civil Procedure 25(d), Robert Wilkie is substituted for David Shulkin as the named defendant.

STARK, U.S. District Judge:

## I.    INTRODUCTION

Plaintiff Terrance Peterson ("Plaintiff") proceeds *pro se*.  He filed this employment

discrimination action against the Secretary of Veterans Affairs ("Defendant") pursuant to Title VII

of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et. seq.*, ("Title VII"); the

Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 621, *et seq.*, ("Rehab Act"); and the Americans

with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA").   (D.I. 2)   The Court has

jurisdiction pursuant to 28 U.S.C. § 1331.   The matter proceeds on Count Three of the Amended

Complaint alleging retaliation under Title VII, all other claims having been dismissed.   (D.I. 19)

Pending is Defendant Robert Wilkie's motion for summary judgment, opposed by Plaintiff.   (D.I.

37)   For the reasons that follow, the Court will grant the motion.

## II.    BACKGROUND

The Amended Complaint refers to protected acts such as the filing of charges of

discrimination and making hostile work environment complaints and alleges that adverse

employment actions followed the complaints.   The sole remaining claim, Count Three of the

Amended Complaint, alleges retaliation under Title VII for Plaintiff's filing of multiple EEO

complaints.   (D.I. 19 at ¶¶ 11, 14, 16)   Plaintiff, an African American male, alleges that he was

barred from the Wilmington VA Medical Center ("WVAMC"), where he had worked, as a pretext to

discharge him in retaliation for his multiple complaints and disclosures.   (*Id.* at ¶ 20)

Plaintiff began his employment with the WVAMC on May 1, 2005.   (D.I. 38-1 at 7)   He

was employed as a healthcare technician at WVAMC's Ear, Nose, and Throat ("ENT") Specialty

Clinic.   (*Id.*)   Plaintiff was removed from his employment effective April 25, 2014.   (*Id.* at 2)

According to the allegations in the Amended Complaint and the record evidence, Plaintiff filed an EEO complaint prior to December 2012 and a discrimination complaint on January 9, 2013. (D.I. 19 at ¶¶ 11, 14; D.I. 38-1 at 31)   On February 21, 2013, Vanessa Covington ("Covington"), Plaintiff's first-level supervisor, issued him a written warning that irrigating a patient's ears to remove earwax was beyond the scope of his duties.   (D.I. 38-1 at 115)   As a healthcare technician, Plaintiff was not permitted to perform invasive procedures like clearing out earwax.   (*Id.* at 104)

In April 2013, following a number of allegations that Plaintiff had engaged in inappropriate conduct (*see id.* at 83-86), the WVAMC Administrative Investigation Board ("AIB") was tasked with investigating inappropriate behavior in the ENT Specialty Clinic and whether there were any violations of VA policy among the ENT workforce.   (D.I. 38-1 at 79)   On June 26, 2013, the AIB concluded that the evidence presented and reviewed supported a finding that Plaintiff "demonstrated disruptive and inappropriate behavior whereas his actions are perceived as threats of physical violence, harassment, intimidation, and other threatening behaviors."   (*Id.* at 87)   Plaintiff was directed to attend five anger management sessions that were paid for by the WVAMC.   (*Id.* at 89)

Plaintiff alleges in the Amended Complaint that he filed a third EEOC complaint in August 2013.   (D.I. 19 at ¶ 16)   The record indicates that on September 11, 2013, Plaintiff filed an EEO discrimination complaint concerning his required attendance at anger management sessions.   (*Id.* at 31-32)

Plaintiff had difficulty finding the location of the anger management session on September 12, 2013, and arrived late for his first session.   (*Id.* at 92)   Albert Marks ("Marks"), an anger management counselor, was scheduled to meet with Plaintiff that day and left his office when Plaintiff did not arrive on time.   (*Id.* at 95)   As Marks was walking toward his truck, he met Plaintiff

2

in the parking and noted that Plaintiff was late.  (*Id.*)   According to Marks, Plaintiff instantly

became agitated by the comment and Plaintiff's response was perceived by Marks as hostile.  (*Id.*)

Marks attempted to bring Plaintiff into his office to talk him through the aggression, but Plaintiff

refused and left.  (*Id.*)   By email, Marks notified WVAMC about his encounter with Plaintiff and

stated that he did not believe his agency, Delaware Anger Management, was the appropriate agency

to assist Plaintiff.  (*Id.* at 98)   Following his encounter with Marks, Plaintiff went to the office of

Cynthia Brown ("Brown"), a WVAMC human resources specialist, and demanded she find him a

new anger management counselor.  (*Id.* at 92, 100)   According to Brown, this was the first time she

had met Plaintiff in person, and she felt threatened by him.  (*Id.* at 92)

Ruthann Wolski ("Wolski"), Plaintiff's second-level supervisor, received a packet of

information concerning the two interactions.  (*Id.* at 103)   Wolski looked at the seriousness of the

misconduct as well as Plaintiff's history of receiving written counseling and decided that a ten-day

suspension was appropriate.  (*Id.*)   According to Wolski, she did not consider Plaintiff's prior

EEOC filings or statements that he had engaged in any protected activity.  (*Id.* at 104)   Wolski

states that during conversations with Plaintiff he frequently mentioned that he had filed numerous

EEOC complaints and had made numerous reports to the Office of Inspector General and elected

officials.  (*Id.*)   On October 21, 2013, Wolski sent Plaintiff a letter that notified him of the

proposed ten-day suspension, the reasons for the suspension, and provided him an opportunity to

reply orally, in writing, or both.  (*Id.* at 106-107)   Plaintiff acknowledged the letter and wrote that

he felt it was discrimination and retaliation for filing an EEOC complaint.  (*Id.* at 107)

Mary Alice Johnson ("Johnson"), WVAMC associate director of patient care services and

Plaintiff's third-level supervisor, was the deciding official on the proposed ten day suspension.  (*Id.*

at 109)   Johnson reviewed the evidence file prepared by human resources, heard Plaintiff's oral

3

response, and reviewed his written reply.   (*Id.*)   Johnson states that Plaintiff brought up his EEOC complaints and other complaints and reports of unfair treatment.   (*Id.*)   Johnson determined that the misconduct spelled out in the proposed ten day suspension had occurred, that his statements were threatening and very serious, that Plaintiff should be subject to disciplinary action, and she hoped that the ten day suspension would lead to a change in Plaintiff's behavior.   (*Id.*)   According to Johnson, she did not consider Plaintiff's history of EEOC activity or any of his protected disclosures.   (*Id.*)

Around October 25, 2013, a patient presented at the ENT clinic and asked medical support assistant Betty Reeves ("Reeves") if Plaintiff was working and explained that, in the past, Plaintiff had cleaned out his ears, and the patient wanted him to do it again.   (*Id.* at 120)   Plaintiff took the patient into an examination room and approximately 15 minutes later the patient left the room and told Reeves that his ears felt much better.   (*Id.*)   Reeves reported this ear cleaning to the WVAMC nurse manager for specialty clinics, Vanessa Covington ("Covington"), who then reported the incident up the chain of command and to human resources.   (*Id.* at 117)

On November 5, 2013, Johnson sent Plaintiff a letter notifying him of his ten day suspension from December 2, 2013 through December 11, 2013.   (*Id.* at 113)   On November 13, 2013, healthcare technician Mac Benjamin ("Benjamin") and Covington were riding the elevator together and Benjamin told Covington that Plaintiff was crazy and Covington should be careful. (*Id.* at 117)   Benjamin also told Covington that Plaintiff hated Dr. Awny Abdou and had threatened to "carve him up like a turkey."   (*Id.* at 117, 118, 128, 130)   Benjamin was "very disturbed" by the comment and could see how angry Plaintiff was based on "the look in his eyes when he made this comment."   (*Id.* at 130)   Covington reported these statements to Wolski, her supervisor, and she also created a written report of contact.   (*Id.* at 118, 133)   Covington also reported her concerns to

4

Johnson that afternoon, and Johnson called the VA Police, who investigated the matter and spoke to Covington and Benjamin.   (*Id.* at 135)

Plaintiff states that he was not at work on November 13, 2013, when the allegations of threats were reported, and that he saw a psychologist on November 15, 2013.   (D.I. 39 at 8)   The record indicates that Plaintiff filed an EEO complaint on November 20, 2013.   (D.I. 38-1 at 32)

On November 26, 2013, anger management counselor Marks reported to Covington that the day before he had received a telephone call from an unidentified individual, whom he identified as Plaintiff from his tone, voice, and the content of the conversation.   (*Id.* at 95, 96, 137)   The individual told Marks that he was at the courthouse and was going to sue over what Marks had said in a September 2013 email to Covington, which described Marks' September 12, 2013 encounter with Plaintiff in the parking lot.   (*Id.*)   Plaintiff told Marks that the email had been used as evidence against him.   (*Id.* at 96)

On December 17, 2013, WVAMC medical support assistant Johnell Ponzo ("Ponzo) met with Plaintiff twice.   (*Id.* at 139)   Ponzo was also the business manager of LIUNA Local 1029, the bargaining unit that included Plaintiff.   (*Id.*)   During the first conversation, Plaintiff stated that he was going to hurt someone or "words to that effect" and that everyone was against him.   (*Id.*)   During the second conversation, Plaintiff said, "I'm going to hurt all of those motherfuckers," adding that he was going to call his congressman and senator and that "he was going to go after them."   (*Id.*)   Ponzo states that although she had heard Plaintiff make comments like this in the past, "this time he seemed different," he had "a distant look in his eyes" that made her uncomfortable," and she was afraid that Plaintiff "could do exactly what he said he was going to do."   (*Id.*)   Ponzo was so troubled by Plaintiff's comments and demeanor that she met with human resources to report what Plaintiff had said.   (*Id.* at 93, 139)   Ponzo states that she was frightened

for her safety. (*Id.* at 139)  Human resources urged Ponzo to make a written report of contact, but she was too apprehensive and afraid. (*Id.* at 93, 142)  A report of contact was made by others who attended a meeting with human resources regarding the events of December 17, 2013. (*Id.* at 93, 144)  According to Plaintiff, he was barred from the facility with an instruction letter dated December 17, 2013, that was given to him on December 18, 2013. (D.I. 39 at 10)  Plaintiff filed an EEO complaint on January 8, 2014. (*See* D.I. 24 at 10)

At some point after December 17, 2013, Johnson received a packet of information concerning Plaintiff's alleged misconduct between October and December of 2013.[2] (*Id.* at 110) Johnson determined that Plaintiff had provided care outside the scope of his duties and that his "actions could have led to serious complications with the patient." (*Id.*)  She also reviewed Plaintiff's statements made in the conduct unbecoming of a federal employee charge and perceived the statements as "threats to the safety and well-being of our staff." (*Id.*)  Johnson considered the numerous occasions that Plaintiff had been told his conduct was unacceptable as well as his disciplinary history, which included a ten day suspension and numerous counseling sessions. (*Id.* at 110)  Johnson felt there was no other penalty she could consider other than removal and stated that Plaintiff's "blatant disregard for authority made it impossible for her to consider any other sanction." (*Id.*)  Johnson states that she did not consider Plaintiff's EEO filings or his statements that he had engaged in protected activity when proposing removal. (*Id.*)  Johnson states that it was only after it became clear that the efforts in working with Plaintiff to stop his inappropriate behavior

---

[2] Presumably Wolski received the packet prior to early March 2014.  The record reflects that in early March 2014, Wolski spoke to a patient and the patient's son about the treatment Plaintiff provided and, in particular, about ear cleaning.  After reviewing medical records and speaking to the patient and the patient's son, Wolski concluded that Plaintiff had cleaned the patient's ears on October 24, 2013. (*Id.* at 122, 124, 126)

would not be successful and that patients and staff were at risk from Plaintiff's behavior that Johnson felt removal was appropriate.   (*Id.*)

On March 18, 2014, Johnson notified Plaintiff in a detailed letter of his proposed removal based upon two charges: performing work outside the scope of his position and conduct unbecoming of a federal employee.   (*Id.* at 151, 152)   Johnson advised Plaintiff of his right to respond either orally or in writing.   (*Id.* at 152; *see also id.* at 155)

WVAMC Director Robin Aube-Warren ("Aube-Warren") reviewed the evidence file prepared by human resources and considered Plaintiff's written response.   (*Id.* at 160)   Plaintiff declined to meet with Aube-Warren.   (*Id.*)   Aube-Warren determined that Plaintiff's misconduct was "intentional" and "repeated" and that his "prior discipline had not corrected his behavior." (*Id.*)   In determining the appropriate penalty, she found that the misconduct clearly warranted removal.   (*Id.*)   According to Aube-Warren, she was unaware of the content of any of Plaintiff's EEO complaints when she made her decision to remove Plaintiff.   (*Id.* at 161)   On April 21, 2014, Aube-Warren sent Plaintiff a letter advising him of the decision to remove him from his employment effective April 25, 2014.   (*Id.* at 2)

Plaintiff litigated his removal and, on December 14, 2014, a Merit Systems Protection Board ("MSPB") Administrative Judge ("AJ") upheld the removal and found that there was no discrimination against Plaintiff.   (*Id.* at 6-42)   Plaintiff sought a petition for review before the MSPB and, on July 31, 2015, the MSPB Board upheld the decision.   (*Id.* at 44-66)   Plaintiff appealed the ruling to the EEOC's Office of Federal Operations.   (*Id.* at 68-70)   On February 25, 2016, the EEOC concurred with the MSPB's finding that Plaintiff did not demonstrate that he was subjected to reprisal or discrimination, and it issued a right to sue notice.   (*Id.* at 72-76)   Plaintiff commenced this action on March 15, 2016.

Defendant moves for summary judgment on the grounds that: (1) Plaintiff failed to make a prima facie case of retaliation under Title VII; (2) Defendant has offered a legitimate, non-retaliatory reason for Plaintiff's dismissal; and (3) Plaintiff can point to no evidence that Defendant's proffered reasons are pretextual. Plaintiff opposes the motion on the grounds that: (1) there remain genuine material issues in dispute; (2) there is a delayed intentional fragmentation of the record, EEOC cases and MSPB procedure; and (3) he has established a prima facie case of retaliation under Title VII.[3]

## III. LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). If the moving party has carried its burden, the nonmovant must then "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).

---

[3] In support of his position, Plaintiff submitted several documents that are not relevant to the issues before the Court, including an undated Department of Veterans Affairs special achievement award, an April 2006 Department of Veterans Affairs certificate of appreciation, two undated Department of Veterans Affairs special contribution awards, an undated Department of Veterans Affairs customer service award, a September 8-12, 1986 certificate of instruction on hearing conservation techniques, an October 31, 1986, certification as an emergency medical technician – ambulance, and a November 20, 1988 United States Marine Corps certificate for outstanding service. (D.I. 39 at 18-25) He also submitted a June 19, 2017, letter from the U.S. Department of Justice that alleged an Assistant U.S. Attorney involved in the litigation of the instant case engaged in misconduct. (*Id.* at 27) He submitted documents concerning a privacy violation claim that he had filed in March 2013. (*Id.* at 27, 29-30) The Amended Complaint, however, did not raise a privacy issue and the claim is not before the Court. Nor are other claims Plaintiff refers to in his opposition, including Fourth Amendment violations, defamation, and alleged misconduct before the MSPC and EEOC. The Court does not consider these claims. *See Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

8

In reviewing a motion for summary judgment, the Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). If the Court can determine that "there is no genuine issue as to any material fact" and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## IV. DISCUSSION

Plaintiff's claim is based on a pretext theory and, therefore, is subject to the *McDonnell Douglas* burden-shifting framework.[4] *See Wright v. Providence Care Ctr., LLC*, __F. App'x__, 2020 WL 4581246, at *7 (3d Cir. Aug. 10, 2020). To establish a prima facie case of retaliation, a plaintiff must

---

[4] Plaintiff did produce direct evidence of discrimination. A plaintiff seeking to rely on purportedly direct evidence faces the "high hurdle" of demonstrating that the proof meets two criteria: first, that it is "strong enough to permit the factfinder to infer that a discriminatory attitude was more likely than not a motivating factor in the [defendant's] decision[;]" and second, that it is "connected to the decision being challenged by the plaintiff." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 269 (3d Cir. 2010) (internal quotation marks and citation omitted; first alteration in original).

9

show: (1) he engaged in a protected activity; (2) after or contemporaneous with engaging in that protected activity, he was subjected to a materially adverse employment action; and (3) there was a causal connection between his protected activity and the employer's action. *See Harrison-Harper v. Nike, Inc.*, 788 F. App'x. 846, 849 (3d Cir. 2019) (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 231 (3d Cir. 2007)). "Although timing and ongoing antagonism have often been the basis for the causal link, [Third Circuit] case law clearly has allowed a plaintiff to substantiate a causal connection for purposes of the prima facie case through other types of circumstantial evidence that support the inference." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000). An individual is not protected from all retaliation, only from retaliation that produces an injury or harm. *See Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Hence, a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal citations and quotation marks omitted). "[I]t is important to separate significant from trivial harms." *Id.* Once a plaintiff proves a prima facie retaliation claim, the Court turns to the *McDonnell Douglas* burden-shifting analysis.

If a plaintiff succeeds in making out a prima facie case, the burden shifts to the defendant employer to proffer a "legitimate non-discriminatory" reason for its actions. *See Reeves*, 530 U.S. at 142. If a defendant meets this burden, the burden shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. *See id.* at 142-43. To do this, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). "To avoid summary

10

judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Harding v. Careerbuilder*, LLC, 168 F. App'x 535, 537 (3d Cir. 2006).

### A.    Prima Facie Case

Defendant argues that Plaintiff failed to make out a prima facie case of retaliation.   Plaintiff disagrees.   The record reflects that Plaintiff engaged in protected activities prior to December 2012, on January 9, 2013, in August 2013, on September 11, 2013, on November 20, 2013, and on January 8, 2014[5] – and that after engaging in that protected activity, he was subjected to adverse employment actions when he was notified on November 5, 2013 of the imposition of a ten day suspension (to be served in early December 2013) and his employment was terminated effective April 25, 2014.[6]

The Court turns to whether there is evidence of a causal connection between Plaintiff's protected activity and the adverse employment action.   The Third Circuit allows a plaintiff to "rely on a 'broad array of evidence' to demonstrate a causal link between his protected activity and the

---

[5] Plaintiff's opposition refers to three EEOC complaints but does not provide the dates of the complaints.   The record indicates that Plaintiff filed more than three EEOC complaints.   Plaintiff also refers to other complaints made by him (*e.g.*, improper and unsafe medical practices, privacy rule violation, attorney misconduct complaints) that are not considered protected activity for purposes of a Title VII retaliation claim.   The anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the "participation clause") and those who oppose discrimination made unlawful by Title VII (the "opposition clause").   *Slagle v. County of Clarion*, 435 F.3d 262, 266 (3d Cir. 2006).

[6] In its February 25, 2016 decision, the EEOC considered two adverse employment actions: the ten day suspension and Plaintiff's removal from employment.   Any other adverse employment actions were not administratively exhausted and claims relating to them are not before the Court.

adverse action taken against him." *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 302 (3d Cir.

2007) (internal quotation marks omitted). "In certain narrow circumstances, an unusually

suggestive proximity in time between the protected activity and the adverse action may be sufficient,

on its own, to establish the requisite causal connection." *Id.* (internal quotations marks omitted).

On the other hand, the "mere passage of time is not legally conclusive proof against retaliation." *Id.*

(internal quotation marks omitted). A court may need to assess other factors as well – "[w]here the

time between the protected activity and adverse action is not so close as to be unusually suggestive

of a causal connection standing alone, courts may look to the intervening period for demonstrative

proof, such as actual antagonistic conduct or animus against the employee, or other types of

circumstantial evidence, such as inconsistent reasons given by the employer for terminating the

employee or the employer's treatment of other employees, that give rise to an inference of causation

when considered as a whole." *Id.* (internal citation omitted).

A plaintiff "cannot establish that there was a causal connection without some evidence that

the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the

time they acted." *Daniels v. School Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015). Accordingly, the

Court considers whether a reasonable jury could link the VA's conduct to retaliatory animus. *See*

*Jensen v. Potter*, 435 F.3d 444, 449 n.2 (3d Cir. 2006) ("The ultimate question in any retaliation case is

an intent to retaliate vel non."). In doing so, the Court considers the "temporal proximity" between

Plaintiff's protected activity, the VA's allegedly retaliatory response, and "the existence of a pattern

of antagonism in the intervening period." *Id.* at 450.

Plaintiff argues there is a direct link between his EEO filings and the imposition of the

suspension and his termination. Other than argument, however, he provides no evidence to

support his position. Some VA employees had no knowledge of Plaintiff's EEO activity, while

12

others stated that in suspending Plaintiff or terminating his employment, Plaintiff's prior EEO activity was not at issue and not considered.

Nor is the temporal proximity between the protected activity and the adverse actions unduly suggestive. *See e.g., Dolan v. Penn Millers Ins. Co.*, 625 F. App'x 91, 94 (3d Cir. 2015) (proximity of three months is not "unusually suggestive," and is insufficient to constitute causal connection); *Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 187-89 & n.30 (3d Cir. 2019) (elapse of over two months between protected activity and adverse employment action "is not so close as to be unduly suggestive" of retaliation); *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (three-week gap between protected activity and adverse employment action not unduly suggestive of retaliation). The record evidence is that Plaintiff filed EEO complaints before December 2012 and up to September 11, 2013, but did not receive his ten day suspension until November 5, 2013 – almost two months after he last filed a complaint. With regard to the termination of his employment, the record evidence is that filed an EEOC complaint on January 8, 2014, and his employment was terminated effective April 25, 2014, almost four months later. Given the unrefuted affidavits and the time-frames for each adverse employment action, neither of which are unduly suggestive of retaliation, the Court finds that Plaintiff has failed to establish the required causal connection element.

Accordingly, no reasonable fact finder (taking the evidence in the light most favorable to Plaintiff) could find that Plaintiff has made out a prima facie case of retaliation under Title VII.

## B.     Legitimate Non-Discriminatory Reason

Even had Plaintiff established a prima facie case of retaliation, Defendant has proffered "legitimate non-discriminatory" reasons for imposing a ten day sanction and for terminating Plaintiff's employment. *See Reeves*, 530 U.S. at 142. The record reflects that the ten day sanction

13

was imposed only after it was deemed warranted following findings that Plaintiff had demonstrated a pattern of disruptive and inappropriate behavior including threats of physical violence, harassment, and intimidation towards staff and contractor employees, and upon documented encounters that Plaintiff had threatened employees. In addition, the record reflects that Plaintiff's employment was terminated for two reasons. The first was that following an investigation, it was determined that Plaintiff had performed medical procedures outside the scope of his job, even after a warning that he was not to perform the procedures. The second was that Plaintiff continued to threaten individuals after he was informed on November 5, 2013 of the impending ten day suspension. The threats were such that staff was frightened for their safety. The decision to remove Plaintiff from his employment occurred following a decision that it was the only appropriate penalty in light of Plaintiff's intentional, repeated misconduct, as prior discipline had failed to correct Plaintiff's behavior.

Nothing before the Court contradicts Defendant's proffered reasons for the actions it took. Nor are its proffered reasons for its actions weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find them unworthy of credence. *See Fuentes*, 32 F.3d at 765.

## C. Pretext

To rebut Defendant's proffered non-discriminatory reasons for the ten day suspension and employment termination and establish that these are pretexts for retaliation, Plaintiff must come forward with "some evidence, direct or circumstantial, from which a factfinder could reasonably either: (a) "disbelieve [Defendant's] articulated reasons" or (b) "believe that an invidious discriminatory reason was more likely than not a motivating factor or determinative cause of [Defendant's] action." *Fuentes*, 32 F.3d at 764. In other words, "to avoid summary judgment, [Plaintiff's] evidence rebutting [Defendant's] proffered legitimate reason must allow a factfinder

14

reasonably to infer that each of [Defendant's] proffered non-discriminatory reasons . . . was either a post-hoc fabrication or otherwise did not actually motivate the employment action." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) (internal quotation marks omitted); *see also Daniels*, 776 F.3d at 193-94. To establish pretext under the first method, Plaintiff's evidence must point out "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Defendant's] proffered legitimate reasons" sufficient to show that Defendant's real reason for termination was discriminatory. *Willis v. UPMC Children's Hosp.*, 808 F.3d 638, 644-45 (3d Cir. 2015). To establish pretext under the second method, Plaintiff must submit proof that Defendant previously discriminated against him, discriminated against others within his protected class, or treated other similarly-situated individuals outside his class more favorably than those within it. *See id.* at 645.

Plaintiff's burden in this final stage is "difficult." *Kautz*, 412 F.3d at 467. Plaintiff cannot show pretext merely with evidence that Defendant's decision "was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated [Defendant], not whether [Defendant] is wise, shrewd, prudent, or competent." *Id.* at 467 (internal quotation marks omitted); *see also Daniels*, 776 F.3d at 198-99. Hence, the Court must look "carefully" at Defendant's proffered reason as well as Plaintiff's claim of pretext. *See Kautz*, 412 F.3d at 468.

Plaintiff seems to argue that he has proven pretext because he was not at work on November 13, 2013 when one of his threatening statements was reported. This is unavailing. Those who reported the threats did not state that Plaintiff was present on the day the co-workers discussed the threats. The report indicates the co-workers' discussion occurred that day, not that Plaintiff made the threats that day. Plaintiff also seems to argue that he was accused of medical malpractice, but the record does not support Plaintiff's contention. As noted, one of the grounds for dismissal was Plaintiff's performance of procedures outside the scope of his position, not that he

15

performed procedures negligently.

In light of the foregoing, and even when drawing all reasonable inferences in Plaintiff's favor, no reasonable jury could find that that the VA's stated reasons for suspending Plaintiff and terminating his employment were pretexts for retaliation.[7]

Accordingly, again, Defendants have shown that summary judgment is warranted.

## V.    CONCLUSION

Taking the evidence in the light most favorable to Plaintff, the Court concludes that Plaintiff has failed to make a prima facie of retaliation, Defendant has offered legitimate and non-retaliatory reasons for Plaintiff's suspension and termination, and Plaintiff failed to demonstrate that Defendant's proffered legitimate reasons for suspension and termination were pretextual. A reasonable fact finder could not find that Plaintiff has met its burden to prove its claim. Thus, the Court will grant Defendant's motion for summary judgment. (D.I. 37)

An appropriate Order will be entered.

---

[7] Plaintiff argues that he would be able to show pretext with discovery and oral argument. On September 3, 2019, Defendant filed initial disclosures and produced to Plaintiff over 1000 pages of documents. (*See* D.I. 35) There is no indication on the Court docket that at any time thereafter Plaintiff sought discovery. Nor at any time did Plaintiff advise the Court that he was somehow precluded from seeking discovery.